**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

Case No. __2:23-cv-00939-DCN__

| | |
|---|---|
| **UNITED FIRE & CASUALTY COMPANY**, <br><br>**Plaintiff,**<br><br>v.<br><br>**MICHAEL WILLIAMS, SUSAN WILLIAMS, and VIRGINIA MARSHALL, individually and in her capacity as Trustee of the MARSHALL LIVING TRUST DATED NOVEMBER 23, 1987,**<br><br>**Defendants.** | **COMPLAINT** |

Plaintiff United Fire & Casualty Company ("**UFG**") files this Complaint against Michael Williams, Susan Williams, Virginia Marshall, and the Marshall Living Trust dated November 23, 1987 (collectively, the "**Defendants**"), and respectfully shows the Court the following:

**PARTIES, JURISDICTION, AND VENUE**

1.

Michael Williams is a citizen and resident of Charleston County, South Carolina, and may be served at his residence at 8344 Kamborne Court, North Charleston, South Carolina, 29420.

2.

Susan Williams is a citizen and resident of Charleston County, South Carolina, and may be served at her residence at 8344 Kamborne Court, North Charleston, South Carolina, 29420.

3.

Virginia Marshall is a citizen and resident of Charleston County, South Carolina, and may be served at her residence at 25 State Street, Charleston, South Carolina 29401.

4.

UFG is a corporation formed under the laws of the State of Iowa, with its principal place of business in Cedar Rapids, Iowa, and is licensed to do business in the State of South Carolina.

5.

This matter concerns an amount in controversy greater than $75,000.00, exclusive of interest and costs.

6.

The Defendants know that the amount in controversy in this matter exceeds $75,000.00, exclusive of interest and costs.

7.

There is complete diversity of state citizenship between the Plaintiff and each of the Defendants.

8.

This Court has jurisdiction of this matter under 28 U.S.C. § 1332(a), and venue is proper in this District under 28 U.S.C. § 1391(a).

**FACTS**

9.

UFG executed payment and performance surety bonds (the "**Bonds**") on behalf of MSK Construction, Inc., at the request of one or more of the Defendants in connection with multiple construction contracts with the United States Department of Veterans Affairs, including projects

located at existing VA medical facilities in Durham, North Carolina, Salisbury, North Carolina, and Charleston, South Carolina (the "**Bonded Projects**").

10.

In consideration of UFG furnishing the Bonds, and other good and valuable considerations, Michael Williams executed a General Contract of Indemnity ("**Indemnity Agreement**") in favor of UFG. An accurate copy of the Indemnity Agreement signed by this Defendant is attached hereto as **Exhibit A.**

11.

In consideration of UFG furnishing the Bonds, and other good and valuable considerations, Susan Williams executed an Indemnity Agreement in favor of UFG. An accurate copy of the Indemnity Agreement signed by this Defendant is attached hereto as **Exhibit A.**

12.

In consideration of UFG furnishing the Bonds, and other good and valuable considerations, Virginia Marshall, in her individual capacity, executed an Indemnity Agreement in favor of UFG. An accurate copy of the Indemnity Agreement signed by this Defendant is attached hereto as **Exhibit A.**

13.

In consideration of UFG furnishing the Bonds, and other good and valuable considerations, Virginia Marshall, acting as trustee and on behalf of the Marshall Living Trust dated November 23, 1987, executed an Indemnity Agreement in favor of UFG. An accurate copy of the Indemnity Agreement signed by this Defendant is attached hereto as **Exhibit A.**

14.

In the Indemnity Agreement, the Defendants (as the "**Indemnitors**" thereunder) agreed, among other things, to do the following:

> **INDEMNITY** SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore. Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.
>
> …
>
> **SETTLEMENTS THIRTEENTH:** The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgement upon the Bonds, unless the Contractor and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such Suit, or to appeal from such judgement, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgement or judgements rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

15.

To date, UFG has received demands and claims against the Bonds in a total amount exceeding $3.3 million.

16.

To date, UFG has incurred losses from the payment and satisfaction of certain of these demands and claims against the Bonds in the amount of $523,804.05.

17.

To date, UFG has incurred attorneys' fees and costs in the total amount of $116,756.16 in investigating and responding to these demands and claims against the Bonds.

18.

The Department of Veterans Affairs has declared MSK Construction, Inc. to be in default, and terminated its services, on at least one of the Bonded Projects.

19.

MSK Construction, Inc. has also notified UFG that it cannot pay for the performance of the work on the remaining Bonded Projects.

20.

UFG has set a reserve in the amount of $3,851,000.00 as a result of the demands and claims made against the Bonds.

21.

By letters dated December 28, 2022 and February 9, 2023, UFG made demands upon the Defendants to deposit with UFG certified funds in the amount that UFG had incurred for costs arising from the bond claims plus the amount of the reserve that UFG has set for claims made upon the bonds. Accurate copies of UFG's demand letters to the Defendants are attached hereto as **Exhibit B** and **Exhibit C**.

22.

UFG hereby again demands that the Defendants deposit with UFG certified funds in the amount of $3,851,000.00.

23.

To date, Defendants have failed to deposit the collateral demanded by UFG in its letters dated December 28, 2022 and February 9, 2023, and UFG has not received any collateral from the Defendants or any person or entity liable under the terms of the Indemnity Agreement.

24.

UFG has incurred losses, expenses, costs, and attorneys' fees in investigating the demands and claims made against the Bonds, in defending, satisfying, and settling certain of these claims, and in seeking indemnification, including the initiation and prosecution of this action, all in an amount exceeding $640,560.21 to date.

25.

All of the above loss, expenses, costs, and attorney's fees UFG has incurred by having executed the Bonds, in investigating the demands and claims made against the Bonds, and enforcing its rights under the Indemnity Agreement were paid in good faith under UFG's belief that it was reasonable and necessary to make such disbursements.

26.

Defendants are liable to UFG for the aforementioned loss, expenses, costs, and attorney's fees, all for which UFG demands judgment against the Defendants.

27.

Given the multiple demands and claims against the Bonds received by UFG, MSK Construction, Inc's admission that it cannot pay for the performance of the work on the remaining

Bonded Projects, and the Defendants' failure to comply with the Indemnity Agreement and post the collateral demanded thereunder, UFG reasonably and justifiably expects that its losses will increase. UFG's expenses and attorney's fees continue to accrue. UFG anticipates that it will incur additional net losses and expenses of at least $3,851,000.00 as a result of its obligations under the Bonds on the Bonded Projects.

## COUNT ONE

### SPECIFIC PERFORMANCE OF COLLATERAL DEMAND

28.

The allegations contained in Paragraphs 1 through 27 are incorporated by reference as though fully restated herein.

29.

On December 28, 2022 and again on February 9, 2023, UFG demanded that Defendants post certified funds as collateral security for losses and expenses incurred and expected on the Bonded Projects in the amount that UFG had incurred for costs arising from the bond claims plus the amount of the reserve that UFG has set for claims made upon the bonds.

30.

The Indemnity Agreement requires Defendants, upon demand, immediately to deposit such payment collateral "as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore." As of the filing of this Complaint, Defendants have not deposited any collateral in any amount.

31.

UFG will suffer irreparable harm if Defendants are not required to post the collateral demanded. A later award of a judgment for indemnification cannot remedy the loss of security or

protect UFG from having to use its own funds to pay demands and claims under the Bonds. Defendants agreed that UFG is entitled to hold the collateral as security and to use it to satisfy claims on the Bonds, and to reimburse UFG for its costs and expenses incurred in performing its obligations under the Bonds and enforcing its rights under the Indemnity Agreement. Enforcement of the Indemnity Agreement is not adverse to any public interest but is consistent with established South Carolina law.

32.

UFG is entitled to a mandatory preliminary injunction granting specific performance of the Indemnity Agreement's requirement that Defendants post collateral as demanded in the amount of $3,851,000.00.

**COUNT TWO**

**DECLARATORY JUDGMENT**

33.

The allegations contained in Paragraphs 1 through 32 are incorporated by reference as though fully restated herein.

34.

Defendants have refused to honor or perform their specific obligations under the Indemnity Agreement to deposit collateral funds with UFG, despite UFG's written demands.

35.

Defendants are contractually obligated to exonerate, indemnify, and keep indemnified UFG from and against any and all liability for losses, costs, and expense of whatever kind UFG has incurred or sustained, or may incur or sustain, as a result of and in connection with the furnishing of the Bonds.

36.

Pursuant to the Indemnity Agreement, Defendants must hold UFG harmless from any and all losses, costs, and expenses and ensure that Surety sustains no losses, costs, or expenses in connection with the Bonds.

37.

There are actual and justiciable controversies between UFG and Defendants.

38.

A declaratory judgment by this Court will resolve the outstanding issues between UFG and Defendants and allow UFG to enforce its rights and hold the Defendants to their obligations under the Indemnity Agreement.

39.

By reason of the foregoing, UFG is entitled to a declaratory judgment proclaiming that, pursuant to the Indemnity Agreement, UFG has unconditional rights and that the Defendants have specific obligations, including, but not limited to, the following:

- Defendants must exonerate, indemnify, and keep indemnified UFG from and against any and all loss, costs, and expense whatsoever that UFG has incurred or sustained, or may incur or sustain, as a result of or in connection with the furnishing of the Bonds, the assumption of obligations by UFG under the Bonds, and/or enforcement of the Indemnity Agreement.

- Defendants must deposit with UFG, upon demand, the cash amount of any reserve against loss which UFG is required or deems it prudent to establish, whether on account of an actual liability or one which is or may be asserted against UFG, whether or not any payment for such loss has been made.

## COUNT THREE

## EXONERATION

40.

The allegations contained in Paragraphs 1 through 39 are incorporated by reference as though fully restated herein.

41.

Pursuant to the Indemnity Agreement, UFG is entitled to exoneration from the Defendants from and against any and all loss, cost, and expense, including attorney's fees, incurred or sustained as a result of or in connection with the Bonds and/or enforcement of the Indemnity Agreement, including the initiation and prosecution of this action, and UFG is entitled to an Order compelling Defendants to exonerate UFG accordingly.

## COUNT FOUR

## JUDGMENT FOR INDEMNITY

42.

The allegations contained in Paragraphs 1 through 41 are incorporated by reference as though fully restated herein.

43.

Defendants are liable to UFG, jointly and severally, under the Indemnity Agreement for all losses, expenses, costs, and attorney's fees that have been or will be incurred by UFG as a result of or in connection with the Bonds and enforcement of the Indemnity Agreement, including the initiation and the prosecution of this action, all for which UFG demands judgment against the Defendants.

44.

All conditions precedent to enforcement of Defendants' duties and obligations under the Indemnity Agreement have been satisfied, performed, or otherwise waived by the Defendants.

WHEREFORE the Plaintiff UFG prays for a judgment in its favor and against the Defendants, jointly and severally, as follows:

(a) compelling Defendants, pursuant to the terms of the Indemnity Agreement, to immediately deposit collateral with UFG of certified funds in the amount of $3,851,000.00;

(b) declaring that Defendants are obligated under the Indemnity Agreement to indemnify and exonerate UFG, and to deposit with UFG the amount of any reserve against loss, all as set forth in the Indemnity Agreement;

(c) compelling Defendants to exonerate and indemnify UFG from and against any and all loss, cost, and expense, including attorney's fees, it faces as a result of or in connection with the Bonds or enforcement of the Indemnity Agreement, including the initiation and prosecution of this action;

(d) for a judgment equal to the amounts of losses, costs, and expenses, including attorney's fees, that UFG has sustained and continues to sustain as a result of having executed the Bonds and enforcing the Indemnity Agreement, in an amount to be shown by the evidence at trial;

(e) for interest on the amounts recoverable by UFG under the Indemnity Agreement from the date of disbursement at the maximum rate permitted by law; and

(f) for such other such relief as the Court deems just and appropriate.

RESPECTFULLY SUBMITTED,

**BOVIS, KYLE, BURCH & MEDLIN, LLC**

Dated: March 7, 2023

/s/ Matthew A. L. Anderson
Matthew A.L. Anderson, Fed ID # 12590
806 Green Valley Road, Suite 203
Greensboro, North Carolina  27408
manderson@boviskyle.com
(336) 907-3905

**Attorneys for United Fire & Casualty Company**

- 12 -