# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| UNITED FIRE & CASUALTY COMPANY, | )<br>) |
| Plaintiff, | )<br>)  No. 2:23-cv-00939-DCN |
| vs. | )<br>)  **ORDER** |
| MICHAEL WILLIAMS; SUSAN WILLIAMS; and VIRGINIA MARSHALL, *individually and in her capacity as Trustee of the Marshall Living Trust Dated November 23, 1987*, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |
| SUSAN WILLIAMS and MICHAEL WILLIAMS, | )<br>)<br>) |
| Third-Party Plaintiffs, | )<br>) |
| vs. | )<br>) |
| KIMBERLY M. MCBURNEY; MSK CONSTRUCTION, INC; and SARAH MARSHALL, | )<br>)<br>)<br>) |
| Third-Party Defendants. | )<br>) |

The following matter is before the court on defendant Virginia Marshall's ("Virginia") motion to set aside default, ECF No. 18. For the reasons set forth below, the court grants the motion.

## I.  BACKGROUND

United Fire & Casualty Company ("UFCC") is a surety company that executed payment and performance surety bonds (the "Bonds") on behalf of MSK Construction, Inc. ("MSK") for construction projects in North Carolina and South Carolina.  UFCC

1

executed the Bonds in connection with construction contracts that MSK entered into with the United States Department of Veterans Affairs (the "VA").[1] In consideration for UFCC's issuance of the Bonds on behalf of MSK for the Bonded Projects, the defendants Susan and Michael Williams (the "Williams"), and Virginia Marshall (collectively, the "Indemnitors") executed a General Agreement of Indemnity (the "Agreement").[2] The Agreement set forth that the Indemnitors would jointly and severally exonerate, indemnify, and keep UFCC indemnified from and against any and all liability for losses and/or expenses including, but not limited to, interest, court costs, and attorney's fees that UFCC sustains or incurs by reason of having executed any Bonds on behalf of MSK or in enforcing the provisions of the Agreement.

The VA has declared MSK to be in default on the project for additions and renovations to Building 11 at the VA facility in Salisbury, North Carolina, and MSK has notified UFCC that it is unable to fund performance of the work required to complete the remaining Bonded Projects. UFCC has received demands and claims against the Bonds

---

[1] Specifically, MSK has contracts with the VA for: (1) the VA Medical Center in Durham, North Carolina (Bond No. 54-210960); (2) renovations to Building 2 at the VA facility in Salisbury, North Carolina (Bond No. 54-219897); (3) construction work on the Operating Room at the VA facility in Salisbury, North Carolina (Bond No. 54-219900); (4) additions and renovations to Building 11 at the VA facility in Salisbury, North Carolina (Bond No. 54-219901); and (5) construction work for the VAMC Pharmacy in Charleston, SC (Bond No. 54-219904) (collectively, the "Bonded Projects").

[2] The complaint did not explain the relationship the Williams and Virginia had to MSK, merely stating their role as Indemnitors. See Compl. However, the Williams' answer and third-party complaint provides additional details. See ECF Nos. 7, 8. MSK is a licensed general contractor that performs commercial construction work and related services throughout the southeast. ECF No. 7 ¶ 40. MSK was formed in 2015 by the trustees of the Marshall Living Trust (namely, Virginia and Paul Marshall), Paul Marshall individually, and Michael Williams. Id. ¶ 41. At the time of MSK's formation, Michael Williams owned 51% of MSK. Id. ¶ 42. In December 2020, Virginia and Paul Marshall's daughters allegedly purchased all of Michael Williams' shares of MSK. Id. ¶ 48.

in the total amount of $3,126,512.74, and to date has paid $523,804.05 of those claims. UFCC has also incurred attorneys' fees and costs in connection with its investigation of and responses to the demands and claims made against the Bonds in the total amount of $116,756.16. UFCC anticipates that its losses will increase and its expenses and attorneys' fees will continue to accrue.

On December 28, 2022, UFCC made written demand on the Indemnitors under the Agreement to deposit certified funds in the amount that UFCC had incurred for costs as set forth above. UFCC reiterated its collateral demand in a second written letter to the Indemnitors dated February 9, 2023. UFCC avers that the Indemnitors have posted no collateral with UFCC in any amount in response to either the December 28 or the February 9 demands. This lawsuit followed.

On March 7, 2023, UFCC filed the complaint asserting causes of action for specific performance of collateral demand, declaratory judgment, exoneration, and judgment for indemnity. ECF No. 1, Compl. On March 30, 2023, the Williams filed two third-party complaints against MSK, Sarah Marshall ("Sarah"), and Kimberly McBurney ("McBurney") (collectively, the "third-party defendants"). ECF Nos. 7, 8. On April 10, 2023, UFCC filed a motion for entry of default against Virginia, ECF No. 12, which was entered by the clerk of court on April 11, 2023, ECF No. 14. On April 25, 2023, Virginia filed the instant motion to set aside default. ECF No. 18. On May 9, 2023, UFCC responded in opposition, ECF No. 24, to which Virginia replied on May 15, 2023, ECF No. 25. As such, the motion is fully briefed and is now ripe for review.

## II. STANDARD

Federal Rule of Civil Procedure 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c). This "good cause" standard is liberally construed "in order to provide relief from the onerous consequences of defaults." Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987); see also Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969) ("Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits."). The decision to set aside an entry of default is "committed to the sound discretion of the trial court." Lolatchy, 816 F.2d at 954.

The Fourth Circuit has identified several factors that a court should consider when determining whether to set aside an entry of default: "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." Payne ex rel. Est. of Calzada v. Brake, 439 F.3d 198, 204–05 (4th Cir. 2006). When considering these factors, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010). "Generally, a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense." Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir. 1967).

## III. DISCUSSION

Virginia asks the court to set aside default for good cause. ECF No. 18-1 at 1. She explains that she was personally served with a copy of the Summons and Complaint at her residence on March 9, 2023, and she forwarded the Summons and Complaint to her late husband's attorney, Craig Ramseyer, Esq. ("Ramseyer"), that same day and requested assistance in locating South Carolina-based representation. Id. at 2. She was unable to locate local counsel until April 21, 2023[3]—a fact communicated to UFCC's counsel via email and two voice messages during the week of April 10, 2023—and this motion was filed within two business days of local counsel's appointment. Id. at 2–3. In response, UFCC focuses on the two prior collateral demand letters sent to Virginia to ask the court to deny this motion. ECF No. 24 at 1–2. The crux of UFCC's argument is that Virginia has presented no meritorious defense, neither in her motion nor in her answer to the complaint, that would permit the court or a jury to find for the defaulting party. Id. at 4–5. UFCC also argues that all the other Payne factors also weigh in favor of denying the motion. Id. at 4–8. In reply, Virginia reemphasizes that her reactions have been prompt, though she has been hindered by Ramseyer's delayed conduct. ECF No. 25 at 1. Additionally, she notes that UFCC has demonstrated no prejudice beyond the delay. Id. As such, Virginia asks the court to grant her motion and permit her the opportunity to develop and present her case for a decision on the merits. Id.

---

[3] In explanation for the delay, Ramseyer did not receive Virginia's message until his return from a business trip. Ramseyer thereafter located Charlotte-based counsel who withdrew their agreement to represent Virginia on April 17, 2023, and the local counsel who ultimately filed the instant motion were contacted on April 18, 2023 and engaged on April 21, 2023. ECF No. 18-1 at 2–3.

In considering whether to set aside the entry of default against Virginia, the court applies the Payne factors to determine whether there is good cause under Rule 55(c). See Payne, 439 F.3d at 204–05. In so doing, the court is mindful of the Fourth Circuit's strong preference that defaults be avoided. The court examines each of the six factors in turn, finding there is good cause to set aside the entry of default and allow the action against Virginia to proceed on its merits.

**A. Meritorious Defense**

The first factor asks whether the moving party has presented a meritorious defense. Payne, 439 F.3d at 204–05. "A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988); Caribbean Indus. Prod., LLC v. Allen Filtration, LLC, 2018 WL 398486, at *3 (D.S.C. Jan. 12, 2018). "[T]he mere assertion of facts constituting a meritorious defense in a pleading satisfies the requirement of showing a meritorious defense." Blackwood v. Georgetown Hosp. Sys., 2013 WL 1342523, at *1 (D.S.C. Apr. 2, 2013) (internal quotations omitted) (citing Cent. Operating Co. v. Util. Workers of Am., 491 F.2d 245, 253 n.8 (4th Cir. 1974) ("[A] party is not required to establish a meritorious defense by a preponderance of the evidence.")).

UFCC claims that Virginia has provided no defense whatsoever, much less a meritorious defense, and emphasizes that her proposed answer "merely states that [Virginia] 'believes there may be facts establishing the availability of certain defenses,' and reserves her right to raise those facts and defenses when and if she determines what they are." ECF No. 24 at 5 (quoting ECF No. 18-4 at 5 ¶ 30). UFCC argues that based

6

on Virginia's proposed answer, "there is simply no basis for this [c]ourt to find it likely that the outcome of a full-fledged trial would be any different than the outcome achieved by the default." Id. at 5–6. In her reply, Virginia seems to implicitly acknowledge that her initial motion setting forth a meritorious defense was admittedly scant.[4] She goes on to explain that in the three weeks since retaining local counsel and filing the motion, Virginia's counsel have identified a letter dated April 17, 2018, from her late husband to UFCC officially notifying the company that he, Virginia, and the Marshall Living Trust were terminating their indemnity obligations on behalf of MSK as permitted by the Agreement. ECF No. 25 at 3–4. As an additional defense, Virginia emphasizes that UFCC is seeking coverage for amounts it has not yet, and may never, incur, which is unreasonable. Id. at 5. As such, she argues that she has shown "some possibility" of a

---

[4] Virginia's original motion merely states that she "has numerous defenses available to her, as demonstrated by the proposed Answer Submitted with her Motion, [ECF No. 18-4]. These defenses include attacks on the merits of the claims as well as affirmative defenses." ECF No. 18-1 at 4. The proposed answer sets forth that, "[a]lthough [Virginia] has not yet had the opportunity to fully investigate or conduct discovery regarding this action, [she] believes there may be facts establishing the availability of certain affirmative defenses." ECF No. 18-4 ¶ 30. To preserve those defenses, she alleges the following:

> 31. The Complaint fails to state facts sufficient to constitute a cause of action and, accordingly, should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.
>
> 32. Plaintiff should not be allowed to recover from [Virginia] for alleged damages it claims it may incur in the future but admits it has not yet incurred.
>
> 33. [Virginia] reserves and does not waive any additional defense or claims that may be revealed through the course of discovery or otherwise.

Id. ¶¶ 31–33.

ruling in her favor such that she should be permitted to conduct discovery and properly defend herself.  Id.

At this stage, Virginia is only required to allege facts, which, if believed, would constitute a defense to UFCC's claim.  See Blackwood, 2013 WL 1342523, at *1.  The court finds that Virginia has satisfied this burden, and, accordingly, this factor weighs in favor of setting aside default.

### B.  Reasonable Promptness

The second factor asks whether the defaulting party acts with reasonable promptness.  Payne, 439 F.3d at 204–05.  This factor "must be gauged in light of the facts and circumstances of each occasion" and the weighing of the facts and circumstances is committed to the discretion of the trial judge.  United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982).  In the instant case, UFCC filed the complaint on March 7, 2023, and the motion for entry of default judgment a month later on April 10, 2023.  Compl.; ECF No. 12. Virginia filed the instant motion to set aside default judgment on April 25, 2023— two weeks after the entry of default and slightly less than two months after the case was filed.  ECF No. 18.

While there was certainly delay in filing any responsive pleading after the date of service, courts also look to when the defaulting party responded to the entry of default and opposing party's motion for default judgment.  See Prince Payne Enters., Inc. v. Tigua Enters., Inc, 2019 WL 1058089, at *3 (D.S.C. Mar. 6, 2019); Ashmore v. Melvin, 2016 WL 3610609, at *2 (D.S.C. July 6, 2016) ("Although Defendants failed to timely file a response to Plaintiff's Complaint, they did promptly respond to Plaintiff's Motion for Default Judgment.").  "District courts in the Fourth Circuit have found that a

8

defendant acted reasonably promptly when waiting seventeen, twenty-one, and thirty-two days after default was entered before attempting to set it aside." Reg'l Med. Ctr. of Orangeburg v. Salem Servs. Grp., LLC, 2020 WL 1956515, at *3 (D.S.C. Apr. 23, 2020). Virginia filed her motion to set aside default fourteen days after the default was entered against her. See ECF Nos. 14, 18. While there is delay, there is not undue delay such that the court would find that Virginia did not act with reasonable promptness. Consequently, the court finds that this factor weighs in favor of setting aside default.

### C. Personal Responsibility

The third factor examines the personal responsibility of the defaulting party. Payne, 439 F.3d at 204–05. "[T]o obtain relief from a judgment under Rule 60(b)(1), a party must show the existence of mistake, inadvertence, surprise or excusable neglect as a ground for relief." Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987). The pertinent issue is whether the defaulting party is ultimately responsible for the failure to respond. Deciding that question requires courts to "focus on the source of the default" and "distinguish between the fault of [the defaulting party]'s attorney and the fault, if any, of [the defaulting party] itself." Augusta Fiberglass, 843 F.2d at 811. "[J]ustice," after all, "demands that a blameless party not be disadvantaged by the errors or neglect of h[er] attorney which cause a final, involuntary termination of proceedings." Moradi, 673 F.2d at 728.

UFCC argues that based upon the filings, "the [c]ourt can only infer that [Virginia] did not retain counsel until she was already in default." ECF No. 24 at 7. As such, she "is entirely responsible for her own failure to either timely answer the Complaint or request an extension of time to answer, and thereby avoid default." Id.

9

UFCC claims that "[i]n the thirty-one (31) days that elapsed between personal service and the motion to enter default, neither [Virginia] nor anyone representing her interests made any effort to contact [UFCC's] attorneys to seek an extension." Id. In contrast, Virginia emphasizes that she bore no personal responsibility for the delays in locating an attorney licensed to practice in South Carolina. ECF No. 18-1 at 5. Virginia contacted Ramseyer to request assistance locating local counsel on the same day she was served. Id. Until April 17, 2023, she believed she had retained appropriate representation through a law firm in Charlotte, North Carolina, but the attorney thereafter declined to represent her which resulted in the delay and scramble to engage new counsel. Id.; see also ECF No. 18-2, Marshall Aff. ¶ 4; ECF No. 18-2, Ramseyer Aff. ¶¶ 10–13. Thus, Virginia argues that this factor weighs heavily in favor of setting aside default. Id. The court agrees.

### D. Prejudice to Non-Moving Party

The fourth factor examines prejudice to the non-moving party. Payne, 439 F.3d at 204–05. "[D]elay in and of itself does not constitute prejudice to the opposing party," and "no cognizable prejudice inheres in requiring a plaintiff to prove a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court." Colleton Preparatory Academy, 616 F.3d at 418–19 (citation omitted and emphasis in original); see also id. at 419 n.6 ("Entry of default raises no protectable expectation that a default judgment will follow, and a party's belief in the integrity of the system must include, to be reasonable, knowledge that a system of integrity makes exceptions 'for good cause shown.'").

UFCC explains that it "has been deprived of the security it is entitled to receive from [Virginia] for over four months since issuing its first demand." ECF No. 24 at 7. Thus, "setting aside default and prolonging [UFCC's] insecurity manifestly operates to prejudice [UFCC's] contractual rights." Id. Virginia emphasizes that there is no prejudice to UFCC because the case is in the early pleading stage: no discovery has yet occurred, and a Scheduling Order has not yet been issued by the court. ECF No. 18-1 at 6. Moreover, UFCC's counsel was informed that Virginia was attempting to retain local counsel and "knew that [she] would file a response to the Complaint as soon as practically possible." Id. (citing Ramseyer Aff. ¶¶ 11–12, 15). Finally, Virginia emphasizes that she is "merely seeking to set aside entry of default, not to vacate a default judgment," which is more forgiving of defaulting parties because it does not implicate any interest in finality. ECF No. 25 at 7 (citing Colleton Preparatory Acad., 616 F.3d at 420).

To assess the prejudice to the non-defaulting party, courts examine whether the delay: (1) made it impossible for the non-defaulting party to present some of its evidence; (2) made it more difficult for the non-defaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud. McKesson Med.-Surgical, Inc. v. Flower Orthopedics Corp., 2018 WL 944375, at *7 (E.D. Va. Feb. 16, 2018) (citing Lolatchy, 816 F.2d at 952–53). Courts give the most weight to the first two factors. Id. (citing Lolatchy, 816 F.2d at 952–53). Upon review of UFCC's response in opposition, the court cannot identify any facts or arguments that fall under any of these four categories—meaning UFCC has not shown that it will be prejudiced, as defined by precedent, if the

11

court were to set aside default. See ECF No. 24. As such, the court finds that this factor weighs in favor of setting aside default.

### E. History of Dilatory Action

Failing to timely answer a summons and complaint does not alone establish a history of dilatory action. Morgan v. Wells Fargo Bank, N.A., 2017 WL 11285493, at *4 (D.S.C. Jan. 11, 2017) (finding that although the defendant failed to timely respond to the complaint, "this one instance of dilatory conduct does not weigh in [the plaintiff's] favor"); Cousar v. M&R Carriers 1, Inc., 2016 WL 3087008, at *2 (D.S.C. June 2, 2016) ("[T]here is no evidence of previous dilatory action by the [d]efendants, absent failing to answer [the plaintiff]'s summons and complaint."). Moreover, the Fourth Circuit considers whether the dilatory action was on the part of the attorney, rather than the defaulting party. See Lolatchy, 816 F.2d at 953; Pinpoint IT Servs., LLC v. Atlas IT Exp. Corp., 812 F. Supp. 2d 710, 727 (E.D. Va. 2011) ("[I]f the dilatory action is solely the fault of the attorney and the defendant is blameless, the Court will favor setting aside default.").

Certainly, UFCC points out that there were two previous communications with Virginia that were purportedly ignored: a letter sent December 28th and another letter sent February 9th. However, upon receipt of the Summons and Complaint on March 9, 2023, Virginia immediately contacted Ramseyer who she tasked with finding local counsel. He was unable to effectively do so until April 21st, ten days after default had been entered against Virginia. Moreover, Virginia highlights that "courts focus on the moving party's history of dilatory conduct in litigation;" and specifically references the Fourth Circuit's practice of examining "a party's history of dilatory action apart from the

delay causing the default itself." ECF No. 25 at 7 (emphasis added) (quoting Davis v. Univ. N.C. at Greensboro, 2022 WL 112192, at *5 (M.D.N.C. Jan. 12, 2022) (internal citation omitted)). Virginia immediately contacted Ramseyer upon receiving notice of the litigation—the subsequent delay came from his efforts to find her appropriate local counsel. Thus, based on the facts before the court, it appears the dilatory action was the fault of the attorney, not Virginia, which favors setting aside default.

### F.  Availability of Less Drastic Sanctions

The sixth and final factor is the availability of less drastic sanctions. Payne, 439 F.3d at 204–05. The court finds that because there are far less drastic sanctions than default available, this factor weighs in favor of setting aside the default. See Cousar, 2016 WL 3087008, at *2; Colleton Preparatory Acad., 616 F.3d at 418 (suggesting that a motion for an award of attorney's fees and costs to a plaintiff in opposing the motion to set aside an entry of default or default judgment could be appropriate); Surf's Up, LLC v. Rahim, 2016 WL 1089393, at *1 (D.S.C. Mar. 21, 2016) ("If any sanction is warranted, it is probably simply requiring Defendants to reimburse Plaintiff for the cost of obtaining the default."); Fidrych v. Marriott Int'l, Inc., 2017 WL 5889204, at *3 (D.S.C. Nov. 29, 2017) ("Although no alternative sanctions have been suggested by the parties, the Fourth Circuit has looked approvingly on an award of attorney's fees and costs to the party opposing the motion to set aside the entry of default.").

UFCC asserts that "any sanction lesser than default is unwarranted." ECF No. 24 at 8. Moreover, UFCC claims that "such lesser sanctions are entirely inappropriate given the clear record of delay and [Virginia's] lack of a single meritorious defense to this action." Id. Virginia maintains that sanctions are not warranted in this matter because

her failure to timely answer "was unintentional, of short duration, and easily remedied." ECF No. 18-1 at 7. However, she notes that if the court were to consider lesser sanctions, other courts have awarded attorney's fees and costs expended by the non-moving party in opposing the motion to set aside the entry of default or have entered an expedited scheduling order. Id. The court finds that sanctions are not warranted.

### IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to set aside default.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**June 9, 2023**
**Charleston, South Carolina**